### In re: FERRO CORPORATION ERISA LITIGATION

No. 1:05CV1594.

United States District Court,
N.D. Ohio,
Eastern Division.

March 21, 2006.

Patrick J. Perotti, Dworken & Bernstein, Painsville, OH, Ralph M. Stone, Shalov Stone & Bonner, Ronen Sarraf, Sarraf Gentile, New York City, for Jon Mark Duquette.

Joseph C. Weinstein, Steven A. Friedman, Thomas S. Kilbane, Squire, Sanders & Dempsey, Cleveland, OH, for Ferro Corporation, Anne M. Granchi, Joseph S. Usaj, James C. Bays, Thomas M. Gannon and Patricia J. Stilwell.

### MEMORANDUM OF OPINION

MANOS, District Judge.

On June 10, 2005, Jon Mark Duquette, Plaintiff, filed the above-captioned ERISA class action against Ferro Corporation (Ferro), Anne M. Granchi, Joseph S. Usaj, and several John Does. (Docket No. 1.) On September 6, 2005, Plaintiff filed an amended complaint adding defendants James C. Bays, Thomas M. Gannon, and Patricia J. Stilwell. (Docket No. 12.)

On November 14, 2005, Defendants filed a motion to dismiss the amended complaint. (Docket No. 24.) On January 13, 2006, Plaintiff filed a brief in opposition. (Docket No. 30.) On February 13, 2006, Defendants filed a reply. (Docket No. 32.) On February 27, 2006, Plaintiff filed a sur-reply. (Docket No. 34.)

For the following reasons, the motion to dismiss (Docket No. 24) is **DENIED**.

### I. FACTUAL BACKGROUND

#### A. The Parties

Plaintiff is a participant in the Ferro Corporation Savings and Stock Ownership Plan (the "Savings Plan"). (Docket No. 12, "Compl.," at ¶¶ 1, 12.)

Ferro is an Ohio corporation and leading producer of performance materials sold to a broad range of manufacturers serving diverse markets throughout the world. *Id.* at ¶ 13. Ferro is the Plan sponsor, the named fiduciary, and a Plan Administrator. *Id.*

Defendant Granchi is a Plan Administrator and Director of Compensation and Benefits. *Id.* at ¶ 15. Defendant Bays is Vice President and General Counsel of Ferro and a Plan Administrator. *Id.* at ¶ 16. Defendant Gannon is Vice President and Chief Financial Officer of Ferro and is authorized by the Plan Administrators to act as a Plan Fiduciary. *Id.* at ¶ 17. Defendant Stilwell is Corporate Manager at Ferro, and is authorized by the Plan Administrators to act as a Plan Fiduciary. *Id.* at ¶ 18. Finally, Defendant Savings and Stock Ownership Plan Committee and its various John Doe members are fiduciaries who exercise discretionary authority over the Plans and/or the Ferro Company Stock Fund. *Id.* at ¶ 14, 19.

#### B. The Plans

The Savings Plan and the Ferro Corporation Bargaining Unit 401(k) Plan (the "Unit Plan") are "employee benefit plans" within the meaning of 29 U.S.C. §§ 1002(3) and 1002(2)(A). *Id.* at ¶ 20. Both Plans are "defined contribution" or "individual account" plans within the meaning of 29 U.S.C. § 1002(34). Thus, retirement benefits provided by the Plans are based solely on the amounts allocated to each individual account. *Id.* at ¶ 21.

The Savings Plan is available to all Ferro employees who are not represented by a union group. *Id.* at ¶ 22. The Unit Plan is available to all Ferro employees represented by a union group that has a plan agreement with Ferro. *Id.* Both Plans are considered voluntary contribution plans whereby participants make pre-tax contributions at a rate of up to 40% of their eligible compensation. *Id.* at ¶ 23. Participants then direct the Plans to purchase investments from options pre-selected by the Plans' fiduciaries. *Id.* The Plans offer several investment options, including the Ferro Company Stock Fund (the "Company Fund"). *Id.* at ¶ 26.

The Company Fund, which is comprised of Ferro common stock, Ferro convertible preferred stock, and cash, is a utilized fund

and is a portion of the Savings Plan. *Id.* at ¶ 28. It is an employee stock ownership plan ("ESOP") within the meaning of 29 U.S.C. § 1107(d)(6)(A). The Plans also qualify as eligible individual account plans ("EIAP") within the meaning of 29 U.S.C. § 1107(d)(3)(A).

Ferro makes matching contributions to the Plans. *Id.* at ¶ 24. Participants are fully vested in their own contributions, while matching contributions vest pursuant to a deferred scale. *Id.* at ¶ 25. Because of these vesting requirements and other rules prohibiting the transfer of matching contributions, a certain portion of the Company Fund cannot be removed or transferred at the participant's direction at a given time. *Id.* at ¶ 29.

The Plans' assets are commingled with the Ferro Corporation Defined Contribution Master Trust (the "Trust"). They represent the Trust's single largest asset. *Id.* at ¶¶ 31–34.

## C. The Allegations

From February 6, 2003 to April 27, 2004, Ferro announced quarterly increases in sales over the preceding years. *Id.* at ¶ 82–96. Throughout this period however, the Performance Chemical segment, which included the Polymer Additive business, struggled due to low demand and high raw material costs. *Id.* Nonetheless, Ferro CEO Hector Ortino and Defendant Gannon remained optimistic. *Id.* at ¶¶ 84, 87, 88. Specifically, Defendant Gannon predicted a 6–8% increase in the chemical segment for the next quarter over the preceding year. *Id.* at ¶ 93.

On April 27, 2004, Ferro announced its financial results for Q:1 04 and reported a 12.4% revenue increase over the preceding year. *Id.* at ¶ 96. With regard to the Performance Chemical segment, Ferro reported an 8.2% revenue increase, attributed to increased demand and pricing. *Id.* at ¶ 98. In response, CEO Ortino stated,

"we are very optimistic that we will reach our long-term revenue growth targets of 6–8 percent annually, while profits after a dramatic recovery in 2004, should reach our growth targets of 12 percent." *Id.* at ¶ 97.

However, on July 23, 2004, Ferro surprised the investing public with an announcement that it would have to lower its earnings expectations for the second quarter by more than 70% due to inappropriate accounting entries. *Id.* at ¶ 99. According to the press release:

> The second quarter 2004 fully diluted earnings per share from continuing operations are expected to be between $0.10 to $0.12. This compares with the analysts' second quarter earnings estimate range of $0.34 to $0.35 per share. The shortfall is largely the result of poor performance by the Polymer Additives business and charges to be taken in the Polymer Additives business unit to remedy inappropriate accounting entries....

> During our financial review process we recently identified several issues in the preliminary results of our Polymer Additives business, commented Hector R. Ortino, chairman and chief executive officer. "Upon a further examination, we determined that the Polymer Additives business unit's performance was well below our expectations and that it will be necessary to take a non-cash charge to earnings related to inappropriate accounting entries."

> The second quarter changes stemmed from an internal investigation of accounting entries made in the Company's Polymer Additives business unit, which both overstated the business unit's performance and undetermined the reliability of the forecasting process in that unit....

*Id.* On the same day, Ferro's market value decreased by 16%. *Id.* at ¶ 100. As of December 31, 2004, the Plans' investments in the Company Fund depreciated by $10 million. *Id.* at ¶ 38. As of January 1, 2005, the Company Fund was "frozen." *Id.* at ¶ 30. Thus, new investments from new contributions and transfers from old contributions were prohibited. *Id.* Nonetheless, the Plans remained heavily invested in the Company Fund. Between January 1, 2005 and May 13, 2005, the Plans' investments in the Company Fund depreciated by another $10.4 million. *Id.* at ¶ 40.

Both the Securities and Exchange Commission ("SEC") and Ferro, through independent firms, are currently investigating the inappropriate accounting entries. *Id.* at ¶¶ 99, 103–112. The ongoing investigations have revealed that the irregularities date back to FY 01 and extend beyond the Polymer Additives business. *Id.* at ¶¶ 102–06. Although Ferro had initially blamed a former subordinate divisional employee, later investigations have identified "isolated instances" of what could be considered possible discussions of inappropriate accounting. *Id.* at ¶¶ 105, 110.

On April 21, 2005, auditor KPMG announced that it was "unable to conclude at this time that the investigation was adequate for its purposes." *Id.* at ¶ 111. Thus, the Audit Committee has "decided to engage an independent firm specializing in investigations to review the original investigative team's procedures and conclusions." *Id.* To date, Ferro has not provided any further information regarding the accounting irregularities and has not filed its Form 10–K for the year ending 2003, or its restated Form I–Q for the first quarter 2004. *Id.* at ¶ 112.

Plaintiff alleges that the individual Defendants knew or should have known that the Company Fund was an imprudent investment. *Id.* at ¶ 80. Specifically, Plaintiff alleges that the individual Defendants knew or should have know about the accounting irregularities by virtue of their positions at Ferro. *Id.* at ¶ 115. Thus, according to Plaintiff, they breached their fiduciary duties of loyalty, prudence and to avoid conflicts of interest, and did not provide complete and accurate information to the plan participants. As to Ferro, Plaintiff alleges that it did not adequately monitor the individual Defendants.

On November 14, 2005, Ferro filed a motion to dismiss raising eight issues:

(1) Has plaintiff stated a claim for breach of the duty of loyalty and prudence under the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001–1461, where the alleged plan fiduciaries had no discretion to eliminate the Company Stock Fund as an investment option?

(2) Has plaintiff stated a claim for breach of the duty of loyalty and prudence where the Complaint does not allege that Ferro's financial condition was seriously deteriorating or that any plan fiduciary had knowledge that Ferro stock was allegedly an imprudent investment?

(3) Can plaintiff pursue a claim against defendants for permitting Participants to invest in Ferro stock where the retirement plans at issue satisfy the requirements of Section 404(c) of ERISA, 29 U.S.C. § 1104?

(4) Has plaintiff alleged the required element of loss causation where there was no lawful course of conduct available to plan fiduciaries that could have avoided the losses that plaintiff alleges?

(5) Has plaintiff stated a claim for breach of fiduciary duty for an alleged failure to disclose where the Complaint does not allege any communication made in a fiduciary capacity?

(6) Has plaintiff stated a claim against Ferro for breach of its alleged fiduciary duty to monitor, where the Complaint contains wholly conclusory allegations? (7) Has plaintiff stated a claim against defendants for breach of fiduciary duty based on alleged conflict of interest, where plaintiff has not pled any actions by defendants that conflicted with their alleged fiduciary duties? (8) Whether defendants can be held liable under ERISA as "co-fiduciaries" for alleged breaches of fiduciary duty, where plaintiff has not pled facts showing that any fiduciary duties were breached, or that defendants knew or knowingly participated in any alleged breaches?

(Docket No. 24–2, at 8.)

## II. STANDARD OF REVIEW

■ Defendants move to dismiss the complaint on the ground that it does not state a claim upon which relief can be granted. *See Fed. R. Civ. P.* 12(b)(6). In deciding a motion to dismiss, the allegations are taken as true and viewed in the light most favorable to the non-movant. A claim will not be dismissed "unless it appears beyond a reasonable doubt that the [non-movant] can prove no set of facts to support his claim which would entitle him to relief." *Hiser v. City of Bowling Green*, 42 F.3d 382, 383 (6th Cir.1994); *see also Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882, 885 (6th Cir.1990).

■ The claim need only give fair notice as to the claim and the grounds upon which it rests. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). Conclusory allegations however, are not sufficient to state a claim. Rather, a claim must set forth specific facts, which, if proved, would warrant the relief sought. *Sisk v. Levings*, 868 F.2d 159, 161 (5th Cir.1989). In addition, a court is not

bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir.2003). A court likewise need not accept unwarranted factual inferences. *Montgomery*, 346 F.3d at 697 (*citing Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987)).

## III. LEGAL ANALYSIS

The federal Employee Retirement Income Security Act of 1974 (ERISA), *as amended*, 29 U.S.C. § 1001–1461, subjects to federal regulation plans providing employees with fringe benefits. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 425 (6th Cir.2002) (*quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Thus, ERISA fiduciaries "must act for the exclusive benefit of plan beneficiaries." *Id.* (*Quoting Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir.1996)). Individuals having discretionary authority or discretionary responsibility in the administration of a plan are considered fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A).

■ The duties of an ERISA fiduciary are set forth in 29 U.S.C. § 1104(a), which states:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

The Sixth Circuit has explained that these duties have three separate components:

(1) The first is a "duty of loyalty" pursuant to which all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries.

(2) The second obligation imposed under ERISA, the "prudent man" obligation, imposes an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion to those same plan participants and beneficiaries.

(3) Finally, an ERISA fiduciary must act for the exclusive purpose of providing benefits to plan beneficiaries.

*Kuper v. Iovenko,* 66 F.3d 1447, 1458 (6th Cir.1995) (internal quotations omitted).

These duties are "the highest known to law." *Chao,* 285 F.3d at 426 (*quoting Howard,* 100 F.3d at 1488). If an ERISA fiduciary does not meet these high standards, he "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). ERISA's enforcement provision allows for a civil action to be brought by any plan participant for appro-priate relief under § 1109. *See* 29 U.S.C. § 1132(a)(2).

## A. Count 1: Duties of Prudence and Loyalty

Plaintiff alleges that the individual Defendants breached their fiduciary duties of prudence and loyalty by continuing to offer the Company Fund as an investment option, and actively investing in that fund, when they knew or should have known that it was no longer prudent to do so. Ferro makes three responses. First, Ferro argues that according to the Plans, the Company Fund was a *required* investment option. *See* Defendants' Ex. B "Savings Plan," at § 11.1; Defendants' Ex. E "Unit Plan," at § 5.1. Thus, according to Ferro, the individual Defendants were not authorized to remove the Company Fund as an investment option. Second, Ferro argues that the plan participants had *sole discretion* to determine how their contributions would be invested. *See* Savings Plan, at § 4.6; Unit Plan, at §§ 5.4, 5.6. Thus, according to Ferro, § 1104(c) bars liability because all investment decisions were made by plan participants. Finally, Ferro argues that Plaintiff has not sufficiently alleged a causal link to any alleged loss. The Court will address each argument in turn.

### 1. Discretionary Authority

■ Under ERISA, "a person is a fiduciary with respect to a plan to the extent ... he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Thus, ERISA defines the term "fiduciary" in *"functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis in original). Here, Ferro is correct that the Company Fund was a re-

quired investment option. *See* Savings Plan, at § 11.1; Unit Plan, at § 5.1. Thus, the individual Defendants did not have authority under the Plans to eliminate it as an investment option. *See e.g.* Savings Plan, at § 10.3 (stating that the Savings Committee "shall have no power in any way to modify, alter, add to or subtract from, any provisions of the Plan.") Rather, the only way to do so would be through a Plan amendment. *See* Savings Plan Art. XII; Unit Plan Art. X. It is well-settled that when a plan sponsor makes a decision regarding the amendment or structure of a plan, it is acting as a settlor of a trust, not as a fiduciary. *See Lockheed Corp. v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); *Varity Corp. v. Howe,* 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). Thus, to the extent that Plaintiff alleges that the individual Defendants breached their fiduciary duties of prudence and loyalty by not amending the Plans to eliminate the Company Fund as an investment option, he has not alleged a claim upon which relief can be granted.

However, as Plaintiff counters, "[t]he Complaint does not *only* allege that Defendants are liable under Count I for not removing Ferro stock as an investment option. The Complaint states that Defendants are also liable under Count I for failing to make 'any ameliorating decisions, such as altering the mix of the Company Fund away from Ferro stock in favor of cash.'" *See* Docket No. 30, at 7 (emphasis in original). Ferro responds that the Plans *require* that the Company Fund be invested primarily in Ferro stock. *See* Savings Plan, at § 1.1(12–13); Unit Plan § 1.1(6–7). Indeed, the Savings Plan contained an ESOP component and ERISA requires that an ESOP invest "primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6)(A). Thus, according to Ferro,

the individual Defendants did not have the authority to do otherwise.

■ The Court disagrees. The use of the word "primarily" still encompasses some discretion. Assuming that the individual Defendants had knowledge of the accounting irregularities and the inflated earnings expectations, they could have easily minimized the extent to which the Company Fund was invested in Ferro stock without necessarily violating the "invested-primarily-in-Ferro-stock" requirement. *See e.g. In re Sprint Corp. ERISA Litig.,* 388 F.Supp.2d 1207, 1220–21 (D.Kan.2004). Indeed, the Sixth Circuit has specifically held that a fiduciary's decision not to diversify notwithstanding the requirement that an ESOP invest primarily in company stock still creates the potential for fiduciary liability. *See Kuper,* 66 F.3d at 1459.

■ Moreover, the Sixth Circuit has also recognized that a fiduciary is not required to blindly follow the terms of a plan if doing so would be imprudent. The seminal Sixth Circuit case in this area is *Kuper v. Iovenko,* 66 F.3d 1447 (1995). In *Kuper,* the Sixth Circuit held that the purpose and nature of ERISA precludes a plan's per se prohibition against diversification or liquidation. 66 F.3d at 1457. Thus, according to the Sixth Circuit, although ESOPs require that plans invest primarily in qualifying employer securities, "[this] purpose ... cannot override ERISA's goal of ensuring the proper management and soundness of employee benefit plans." *Id.* Indeed, under ERISA, a plan fiduciary may only follow plan terms to the extent that they are consistent with ERISA. *See* 29 U.S.C. § 1104(a)(1). Thus, the Sixth Circuit adopted the Third Circuit's approach in *Moench v. Robertson,* 62 F.3d 553 (1995) and concluded that a fiduciary's decision to remain invested in employer securities should be presumed reasonable. *Kuper,* 66 F.3d at 1459.

However, the Sixth Circuit continued, "[a] plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Id.*

Ferro concedes that the *Moench* presumption applies, but argues that Plaintiff has not alleged sufficient facts to rebut the presumption. The courts are split as to whether it is appropriate to evaluate the *Moench* presumption on a motion to dismiss. *Compare In re AEP ERISA Litig.,* 327 F.Supp.2d 812, 828–29 (S.D.Ohio 2004); *In re Xcel, Inc.,* 312 F.Supp.2d 1165, 1180 (D.Minn.2004); *In re Electronic Data Sys. Corp.,* 305 F.Supp.2d 658, 668–69 (D.Tex. 2004); *In re Ikon Office Solutions,* 86 F.Supp.2d 481, 492 (D.Pa.2000) (all refusing to evaluate the *Moench* presumption on a motion to dismiss); *with Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090, 1098–99 (9th Cir.2004); *In re Sprint,* 388 F.Supp.2d at 1222–24; *In re Duke Energy ERISA Litig.,* 281 F.Supp.2d 786, 794–95 (D.N.C.2003) (all evaluating the *Moench* presumption on a motion to dismiss). The Sixth Circuit has not addressed the issue.[1]

The Court has serious doubts as to whether it is appropriate to evaluate the *Moench* presumption this early in the litigation. Indeed, presumptions are generally considered evidentiary standards, not pleading requirements. *See e.g. Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511–12, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Also, requiring a plaintiff to plead facts overcoming the *Moench* presumption conflicts with Rule 8(a)'s notice-pleading standard. *See In re AEP,* 327 F.Supp.2d at 828–29; *In re Xcel,* 312 F.Supp.2d at 1180; *In re Electronic,* 305 F.Supp.2d at 668–69.

Nonetheless, the Court concludes that Plaintiff has alleged sufficient facts to overcome the *Moench* presumption, at least with respect to surviving a motion to dismiss. Here, Plaintiff alleges that (1) Ferro inflated its earnings expectations through accounting manipulations; (2) the individual Defendants knew or should have known about the irregularities; (3) Ferro stock plummeted as a result; and (4) the Plans lost roughly $20 million. Thus, he has sufficiently alleged facts "showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *See Kuper,* 66 F.3d at 1459.

Ferro argues that in order to rebut the *Moench* presumption, Plaintiff must allege extraordinary circumstances such that Ferro was on the brink of impending collapse. The courts are split on this issue. *Compare Lalonde v. Textron, Inc.,* 369 F.3d 1 (1st Cir.2004); *In re Sprint,* 388 F.Supp.2d at 1221–23 (both concluding that a plaintiff need not allege impending collapse) *with In re Duke Energy,* 281 F.Supp.2d at 793–95; *In re McKesson,* 391 F.Supp.2d 812, 843–44 (N.D.Cal. 2005) (both concluding that a plaintiff needs to allege dire circumstances such as impending collapse).

The "impending collapse" language originates from the *Moench* decision itself. In *Moench,* the Third Circuit recognized that a fiduciary's knowledge of impending collapse, coupled with his conflicted status, can constitute an abuse of discretion. 62 F.3d at 571–72. However, *Moench* involved a company that was, in fact, on the brink of financial collapse. *Id.* at 557. Nowhere in the opinion does the Third Circuit limit its holding to companies facing such dire circumstances. More impor-

---

**1.** Although the Sixth Circuit adopted the *Moench* presumption in *Kuper,* that case in- volved a motion for summary judgment, not a motion to dismiss.

tantly, the Sixth Circuit opinion adopting the *Moench* presumption, has a much broader holding: "[a] plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Kuper*, 66 F.3d at 1459. Nowhere in the opinion does the Sixth Circuit use the words "impending collapse."

Ferro relies heavily upon *In re Calpine Corp. ERISA Litig.*, 2005 U.S. Dist. LEX-IS 9719 (N.D.Cal. Mar. 30, 2005). However, *In re Calpine* was relying upon Ninth Circuit case law, which requires an allegation that the "company's financial condition is seriously deteriorating and that there is a genuine risk of insider self-dealing." *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098 (9th Cir.2004).[2] Again, the Sixth Circuit does not have these requirements. *See Kuper*, 66 F.3d at 1459.

The Court emphasizes that this is not a case in which a plaintiff is complaining about mere stock fluctuations. To the contrary, Plaintiff alleges that the individual Defendants were aware that Ferro's earnings expectations were inflated and when Ferro went public with this information, the Plans lost roughly $20 million dollars. Again, Plaintiff has alleged sufficient facts showing that under these circumstances, a prudent investor might have made a different investment decision and that such conduct constitutes an abuse of discretion.

Ferro makes one additional argument that merits discussion. Ferro argues that Plaintiff has not sufficiently alleged that the individual Defendants knew or should have known about the accounting irregularities. The Court disagrees. Plaintiff alleges that the individual Defendants had such knowledge by virtue of the their positions at Ferro. *Compl.* at ¶ 115. Indeed, the various individual Defendants include the Director of Compensation and Benefits, Ferro's Vice President and General Counsel, Ferro's Chief Financial Officer, and Ferro's Corporate Manager. Thus, the allegation that these individuals knew or should have known about the accounting irregularities by virtue of their positions at Ferro is not a wholly conclusory allegation under a notice pleading standard.[3]

**2. 29 U.S.C. § 1104(c)**

Title 29 of the United States Code, Section 1104(c) provides that fiduciaries are not liable for the losses incurred by plan participants if the loss resulted from their own independent investment decisions. Here, plan participants had sole discretion to determine how their contributions would be invested and whether they would invest in the Company Fund. *See* Savings Plan, at § 4.6; Unit Plan, at §§ 5.4, 5.6. Moreover, the Summary Plan Descriptions ("SPD") for each Plan informed the plan participants of § 1104(c) and that they were solely responsible for their own in-

---

**2.** Incidentally, the Ninth Circuit has criticized the Third and Sixth Circuits for adopting the *Moench* presumption. *See Wright*, 360 F.3d at 1097.

**3.** Because Plaintiff alleges that the individual Defendants knew or should have known about the accounting irregularities, Ferro urges the Court to apply Rule 9(b)'s heightened pleading standard. However, Plaintiff's breach of fiduciary claim is not premised upon misrepresentation. Rather, it is premised upon the fiduciary's *inaction* in light of the adverse circumstances created by the alleged misrep-

resentation. The distinction is subtle but important. The duty arose out of the adverse conditions, not the misrepresentation. Thus, Rule 9(b) does not apply to the allegations in Count 1. *See also In re Xcel*, 312 F.Supp.2d at 1179; *In re AEP*, 327 F.Supp.2d at 821–22; *In re Electronic*, 305 F.Supp.2d at 672; *Rankin v. Rots*, 278 F.Supp.2d 853, 866 (E.D.Mich.2003). Additionally, Rule 9(b) specifically exempts "malice, intent, knowledge, and other condition of mind of a person" from its heightened pleading standard. *See Fed. R. Civ. P.* 9(b).

vestment decisions. *See* Defendants' Ex. C "Savings Plan SPD," at 11; Defendants' Ex. F "Unit Plan SPD," at 8. Thus, according to Ferro, § 1104(c) bars Plaintiff's claims as a matter of law.

█ However, regardless of the merits of this defense, § 1104(c) is just that, an affirmative defense, not a pleading requirement. Thus, it is inapplicable at this early stage of the litigation. *See In re AEP*, 327 F.Supp.2d at 829–30; *In re Sprint*, 388 F.Supp.2d at 1234; *Rankin*, 278 F.Supp.2d at 872–73; *In re World-Com, Inc.*, 263 F.Supp.2d 745, 764 n. 12 (S.D.N.Y.2003). Indeed, § 1104(c) defenses require fact-intensive inquiries into whether the plan meets all of the relevant DOL regulatory requirements. *See* 29 C.F.R. § 2550.404c–1 Such inquiries are especially complex in cases, such as the instant one, when material information was allegedly withheld from plan participants. *See e.g. In re Worldcom*, 263 F.Supp.2d at 764 n. 12; *see also* 29 C.F.R. § 2550.404c–1(c)(2). Thus, the Court will not evaluate the defense at this early stage of the litigation.

### 3. Loss Causation

█ In order to establish an ERISA breach of fiduciary duty claim, a plaintiff must show a causal link between the breach and the loss alleged. *See Kuper*, 66 F.3d at 1459; *see also* 29 U.S.C. § 1109(a) (stating that a fiduciary is liable for losses *resulting from* the breach). Ferro makes three arguments with regard to loss causation. First, Ferro argues that because Plaintiff cannot posit an actionable breach of fiduciary duty, Plaintiff cannot establish a causal link to any alleged loss. However, the Court has already concluded that Plaintiff has posited an actionable breach of the fiduciary duties of prudence and loyalty. Thus, this argument lacks merit.

Second, Ferro argues that even if the individual Defendants had knowledge of the accounting irregularities, acting on such information would have constituted insider trading in violation of federal securities laws. Thus, according to Ferro, the individual Defendants had no lawful course of action available to them that would have avoided the losses. Again, the courts have split on this issue. *Compare In re AEP*, 327 F.Supp.2d at 822–23; *In re Xcel Energy*, 312 F.Supp.2d at 1181–82; *In re Electronic*, 305 F.Supp.2d at 673; *In re CMS Energy ERISA Litig.*, 312 F.Supp.2d 898, 914–15 (E.D.Mich.2004); *In re Enron Corp.*, 284 F.Supp.2d 511, 565–66 (S.D.Tex. 2003); *with Crowley v. Corning, Inc.*, 2004 WL 763873, *10–11, 2004 U.S. Dist. LEXIS 758, at *30–31 (W.D.N.Y Jan. 14, 2004); *In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588, *6–8, 2002 U.S. Dist. LEXIS 19473, *19–24 (N.D.Ca. Sept. 30, 2002); *Hull v. Policy Management Systems Corp.*, 2001 WL 1836286, *9, 2001 U.S. Dist. LEXIS 22343, *26–27 (D.S.C. Feb. 9, 2001).

█ The Court concludes that federal securities laws do not relieve ERISA fiduciaries from their duties owed to plan participants. Indeed, the Secretary of Labor has provided three specific courses of action a fiduciary may take in these instances that will comply with federal securities laws and ERISA. First, the fiduciary can disclose the relevant information to the shareholders and the public at large. *See In re Enron*, 284 F.Supp.2d at 566 (*quoting* Amicus Brief filed by Secretary of Labor). Early disclosure may minimize the amount of money a plan will lose. Second, the fiduciary can eliminate the company stock as an investment option. *Id.* According to the Secretary of Labor, insider trading laws are only implicated by a decision to buy or sell a security. *Id.* Third, the fiduciary can notify the appro-

priate regulatory authorities. *Id.* Thus, the individual Defendants had three lawful options available to them. More importantly, to hold otherwise would be to encourage the alleged misconduct. As the *In re Enron* court aptly stated:

> This Court does not believe that Congress, ERISA or the federal securities statutes sanction such conduct or such a solution, i.e., violating all the statutes and conning the public. As a matter of public policy, the statutes should be interpreted to require that persons follow the laws, not undermine them. They should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by Enron officials and plan fiduciaries of Enron's concealed, material financial status to the investing public generally, including plan participants, whether "impractical" or not, because continued silence and deceit would only encourage the alleged fraud and increase the extent of injury.

284 F.Supp. at 565. The Court finds this analysis and reasoning persuasive.

Finally, with regard to loss causation, Ferro argues that early disclosure would have resulted in the same loss amount. Thus, according to Ferro, no course of action would have prevented the loss to the Plans. Ferro is correct that public disclosure would have most likely caused significant losses no matter when it occurred. However, whether those losses would have been more or less significant is a speculative issue inappropriate for resolution at this early stage of the litigation.

In short, Plaintiff alleges that (1) Ferro inflated its earning expectations through accounting manipulations; (2) the individual Defendants knew or should have known about the irregularities; (3) Ferro stock plummeted as a result of the public disclosure; and (4) the Plans lost roughly $20 million. Rule 8(a)'s notice pleading standard requires nothing more. The motion to dismiss, with regard to Count 1, is denied.

**B. Count 2: Duty to Monitor**

 Plaintiff alleges that Ferro breached its fiduciary duty to monitor the individual Defendants. Ferro makes two responses. First, Ferro argues that because Plaintiff cannot posit an actionable underlying breach of a fiduciary duty, he cannot establish that Ferro was derelict in its duty to monitor. However, the Court has already concluded that Plaintiff has sufficiently alleged an underlying breach of the fiduciary duties of prudence and loyalty. Thus, this argument lacks merit. Second, Ferro argues that Plaintiff relies solely on conclusory allegations to support his claim that Ferro breached its duty to monitor. The Court disagrees. An appointing fiduciary, such as Ferro, has an ongoing duty to monitor its fiduciary appointees. *See e.g. Baker v. Kingsley,* 387 F.3d 649, 663–64 (7th Cir.2004); *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1465 (4th Cir.1996); *see also* 29 C.F.R. § 2509.75–8 at FR–17. Here, Plaintiff alleges that Ferro (1) did not take any action when it knew that the Company Fund was no longer a prudent investment option; (2) did not ensure that the monitored fiduciaries completely appreciated the risk to plan participants; and (3) did not provide complete and accurate information regarding Ferro's financial condition. The Court concludes that these allegations sufficiently allege a breach of the fiduciary duty to monitor under a notice pleading standard. The motion to dismiss, with regard to Count 2, is denied.

**C. Count 3: Duty to Inform**

Plaintiff alleges that the individual Defendants (1) breached their affirmative

duty to inform by not disclosing the true financial condition of Ferro; and (2) breached their negative duty not to misinform by providing false information regarding the financial condition of Ferro. Ferro makes two responses. First, Ferro argues that there was no affirmative duty to inform plan participants about the accounting irregularities. Second, Ferro argues that none of the alleged misrepresentations were made by any of the individual Defendants in their fiduciary capacities. The Court will address each argument in turn.

### 1. Affirmative Duty to Disclose

■ Courts have split over the extent to which ERISA fiduciaries must disclose information to plan participants. *See In re Xcel Energy, Inc.*, 312 F.Supp.2d at 1175–77 (discussing the various positions of the several courts). However, the Sixth Circuit has specifically recognized that the ERISA duty to disclose "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the [fiduciary] knows that silence might be harmful." *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 548 (6th Cir.1999) (*quoting Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir.1993)). The Sixth Circuit has limited such claims to the detailed disclosure requirements set forth in ERISA. *See Sprague v. Gen'l Motors Corp.*, 133 F.3d 388, 405 (6th Cir.1998) (en banc); *see also* 29 U.S.C. §§ 1021–1026. These requirements include a summary plan description, a plan description, certain annual and supplementary reports, notice of a plan's failure to meet certain funding standards, and notice of certain transfers of excess pension fund assets. *See generally* 29 U.S.C. § 1021(a)-(e). As the Sixth Circuit rea-

soned, "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Sprague*, 133 F.3d at 405.

■ Here, Plaintiff alleges that the individual Defendants did not disclose the *general risks* involved in investing in company stock. Such allegations are sufficient to establish a breach of the affirmative duty to disclose under ERISA, at least at this early stage of the litigation. *See Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1408 (9th Cir.1989). However, the individual Defendants did not have an affirmative duty under ERISA to provide Plaintiff with non-public information regarding Ferro's financial condition. Indeed, Plaintiff is unable to cite a single provision in ERISA requiring such disclosure.[4] Although the individual Defendants had an obligation to protect the Plans under these circumstances because of their duties of prudence and loyalty, they did not have a duty to disclose non-public information to plan participants about the accounting irregularities. Thus, Plaintiff's affirmative duty to disclose claim is limited to the disclosure requirements set forth in 29 U.S.C. §§ 1021–1026.

### 2. Negative Duty Not to Misinform

■ The negative duty not to misinform requires a slightly different inquiry. Here, Plaintiff is alleging that Ferro did supply plan participants with certain information regarding the financial condition of Ferro and that this information was inaccurate and misleading. In the Sixth Circuit, in order to establish such a claim, a plaintiff must show: (1) that the defendant

---

■ Plaintiff's citation to *In re Unisys Sav. Plan Litig.*, 74 F.3d 420 (3d Cir.1996) is unavailing. In that case, plan participants made several inquiries into a particular investment option

and were repeatedly misled. *Id.* at 430–31, 442–43. No such allegation has been made in the instant case.

was acting in a fiduciary capacity when it made the challenged representations; (2) that the misrepresentation were material; and (3) that the plaintiff relied on the misrepresentations to his detriment. *James v. Pirelli Armstrong Tire Corp.,* 305 F.3d 439, 449 (6th Cir.2002). "[A] fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *Krohn v. Huron Mem. Hosp.,* 173 F.3d 542, 548 (6th Cir.1999) (*citing Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1163–64 (6th Cir.1988)).

▮ The sole issue raised by Ferro concerns the first element, whether the individual Defendants were acting in their fiduciary capacities when the alleged misrepresentations were made. According to Ferro, all of the challenged communications (SEC filings, press releases, conference calls with analysts and investors, and newspaper articles) were made to the general public in the course of Ferro's regular business operations. Ferro is correct that a fiduciary is not liable under ERISA simply because he made public statements concerning a company's financial condition. Indeed, in *Varity Corp. v. Howe,* 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court stated that such statements are actionable under ERISA only to the extent that they are specifically tied to plan benefits. Here, with respect to the press releases, conference calls, and newspaper articles, Plaintiff makes no such allegations. Thus, any alleged misrepresentations in these public statements are not actionable under ERISA.

▮ With regard to the SEC filings however, Plaintiff alleges that these communications were incorporated into plan documents and/or disseminated to plan participants. Indeed, federal securities laws require an employer to disseminate certain portions of its SEC filings (Form

S–8) to employees. *See In re Worldcom,* 263 F.Supp.2d at 766 n. 14. Thus, according to Plaintiff, any misrepresentations contained in the SEC filings are actionable under ERISA. The Court agrees. *See also In re Worldcom,* 263 F.Supp.2d at 766–67; *In re Sprint,* 388 F.Supp.2d at 1226; *In re CMS Energy,* 312 F.Supp.2d at 915–16; *In re Reliant Energy ERISA Litig.,* 336 F.Supp.2d 646, 671 (S.D.Tex. 2004). Thus, to the extent that Plaintiff alleges that the individual Defendants breached their fiduciary duties not to misinform by incorporating false SEC filings into plan documents, he has alleged a cause of action upon which relief can be granted.

The motion to dismiss, with respect to Count 3, is denied.

## D. Count 4: Duty to Avoid Conflicts of Interest

Plaintiff alleges that the individual Defendants breached their fiduciary duty of loyalty by permitting conflicts of interest to influence their fiduciary decisions. Specifically, Plaintiff alleges that the individual Defendants continued to offer the Company Fund as an investment option even though it was imprudent to do so without taking any ameliorating steps to avoid any conflicts of interest, such as appointing independent fiduciaries or notifying relevant federal agencies. Ferro argues that ERISA expressly allows officers and agents of an employer to serve simultaneously as plan fiduciaries. Thus, according to Ferro, no conflict of interest existed. Plaintiff responds that he is not alleging that the individual Defendants were conflicted simply because they were corporate officers. Rather, according to Plaintiff, the individual Defendants breached their fiduciary duties because they were in a conflicted position and allowed their con-

flicts of interest to influence their decision-making to the detriment of the Plans.

 Under ERISA, the duty of loyalty includes the duty to avoid conflicts of interest. *Mertens,* 508 U.S. at 251–52, 113 S.Ct. 2063 (internal quotation omitted); 29 U.S.C. § 1104(a). As the Sixth Circuit stated, the duty of loyalty requires that "all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries." *Kuper,* 66 F.3d at 1458; *see also* 29 U.S.C. § 1106(b) (prohibiting fiduciary transactions that conflict with the interests of plan participants).

Ferro is correct that a conflict of interest does not exist simply because a fiduciary also works as an agent of the employer. Indeed, ERISA specifically states, "[n]othing in section 1106 shall be construed to prohibit any fiduciary from ... serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest." 29 U.S.C. § 1108(c)(3). Moreover, a conflict of interest does not exist simply because a fiduciary holds company stock and is paid according to company performance. *See e.g. In re Worldcom,* 263 F.Supp.2d at 768; *In re Polaroid ERISA Litig.,* 362 F.Supp.2d 461, 479 (S.D.N.Y.2005); *In re Syncor ERISA Litig.,* 351 F.Supp.2d 970, 987 (C.D.Cal.2004). However, when those dual interests conflict, the duty of loyalty is implicated. Here, Plaintiff alleges that the individual Defendants were aware that Ferro's earnings expectations were inflated due to accounting irregularities, rendering the Company Fund an imprudent investment. Nonetheless, wearing their fiduciary "hats," they continued to offer the Company Fund as an investment option to the detriment of the Plans. In doing so, according to Plaintiff, the interests of the individual Defendants, as corporate officers, to protect the company and their own assets, conflicted with their interests to protect the Plans. Moreover, according to Plaintiff, the individual Defendant took no ameliorating steps such as appointing an independent fiduciary or seeking independent advice. The Court concludes that, at least at this early stage of the litigation, Plaintiff has sufficiently alleged a breach of the duty to avoid conflicts of interest. *See e.g. In re EDS,* 305 F.Supp.2d at 673–74.

The motion to dismiss, with respect to Count 4, is denied.

**E. Co–Fiduciary Liabilities**

Finally, Ferro argues that because Plaintiff cannot posit an actionable underlying breach of fiduciary duty, he cannot establish co-fiduciary liability. However, the Court has already concluded that Plaintiff has sufficiently alleged several underlying breaches of fiduciary duties. Thus, this argument lacks merit.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Docket No. 24) is **DENIED.**

**IT IS SO ORDERED.**