**In re: THE GOODYEAR TIRE & RUBBER COMPANY ERISA LITIGATION.**

Nos. 5:03 CV 2182, 5:03 CV 2183, 5:03 CV 2209, 5:03 CV 2219, 5:03 CV 2220, 5:03 CV 2262, 5:05 CV 2360, 5:03 CV 2367, 5:03 CV 2588, 5:04 CV 75, 5:04 CV 102.

United States District Court,
N.D. Ohio,
Eastern Division.

July 6, 2006.

Lynn Lincoln Sarko, Derek W. Loeser, Erin M. Riley, Tobias J. Kammer, Keller Rohrback L.L.P., Seattle, WA, for George W. Loomis, Richard A. Lindstrom, Joseph Prather, Sherise Prather, Johnny T. Dyer, Jonathan C. Tyler, Sr. ("Named Plaintiffs").

Jerome S. Hirsch, Jonathan Lerner, Jacob B. Radcliff, Lauren E. Aguiar, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, Counsel for Defendant the Goodyear Tire & Rubber Company.

Gregory C. Braden, Michael G. Monnolly, Robert N. Rust, IV, Peter M. Varney, Alston & Bird, LLP, Atlanta, GA, Counsel for Goodyear Tire & Rubber Co., Robert J. Keegan, Robert W. Tieken, Samir G. Gibara, Stephanie W. Bergeron, Darren R. Wells, Donald D. Harper, Kathleen T. Geier, Mike L. Burns, W. James Fish, David L. Jesse.

Daniel R. Warren (0054595), Bridget M. Brennan (0072603), Baker & Hostetler LLP, Cleveland, Local Counsel for Defendant The Northern Trust Company.

Craig C. Martin, William L. Scogland, Jenner & Block LLP, Chicago, IL, Lead Counsel for Defendant The Northern Trust Company.

L. Clifford Craig, W. Stuart Dornette, Taft Stettinius & Hollister, Cincinnati, for Darren R. Wells, David L. Jesse, Donald D. Harper, Kathleen T. Geier, Mike L. Burns, Robert J. Keegan, Robert W. Tieken, Samir G. Gibara, Stephanie W. Bergeron, W. James Fish.

Jack Morrison, Jr., Thomas R. Houlihan, Lisa A. Fike, Amer Cunningham Co., L.P.A., Akron, Local Counsel for Goodyear Tire & Rubber Company, Robert J. Keegan, Robert W. Tieken, Samir G. Gibara, Stephanie W. Bergeron, Darren R. Wells, Donald D. Harper, Kathleen T. Geier, Mike L. Burns, W. James Fish, David L. Jesse.

John T. Billick, Duvin Cahn & Hutton, Cleveland, for Darren R. Wells (03–2209, 03–2219, 03–2220, 03–2360, 04–75), Does 1–100, Donald D. Harper, Kathleen T. Geier, Mike L. Burns.

## MEMORANDUM OPINION & ORDER

ADAMS, District Judge.

### I. Introduction

Plaintiffs, who are participants in The Goodyear Tire & Rubber Company Employee Savings Plan for Salaried Employees (the "Salaried Plan") or The Goodyear Tire & Rubber Company Employee Savings Plans for Bargaining Unit Employees (the "Bargaining Unit Plan") brought this action on behalf of themselves and a class of others similarly situated pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Collectively, the Salaried Plan and the Bargaining Unit Plan are referred to as the "Plans."

Plaintiffs filed suit against Defendants The Goodyear Tire & Rubber Company,

Samir G. Gibara, Robert J. Keegan, Robert W. Tieken, John G. Breen, William E. Butler, Thomas H. Cruikshank, Katherine G. Farley, William J. Hudson Jr., Steven A. Minter, Agnar Pytte, George H. Schofield, William C. Turner, Martin D. Walker, Edward Fogarty, Philip A. Laskawy, James M. Zimmerman, Susan A. Arnold, James C. Boland, Gary D. Forsee, Kathryn D. Wriston, Rodney O'Neal, Shirley D. Peterson, and John Doe Defendants 1–20, alleging that they failed to act solely in the interest of the participants and beneficiaries of the Plans and failed to exercise the required skill, care, prudence, and diligence in administering the Plans and the Plans' assets from April 15, 1998 to the present (the "Class Period").

Defendants have filed a motion seeking the dismissal of Plaintiffs' Consolidated Amended Complaint (the "Amended Complaint"), which presents the Court with essentially the following issues: (1) whether the actions alleged constitute a breach of fiduciary duty; (2) whether Count I of the Amended Complaint properly pleads a claim for failing to prudently and loyally manage plan assets; (3) whether Count II properly pleads a claim for failing to provide complete and accurate information; (4) whether all Defendants were plan fiduciaries in the manner and to the extent alleged in the Amended Complaint; (5) whether Count III properly pleads claims for failure to monitor fiduciary appointees; (6) whether the Amended Complaint properly pleads claims for breaches of fiduciary duty; (7) whether Count IV properly pleads a claim for co-fiduciary liability; and, (8) whether Count V properly pleads a claim for knowing participation in a breach of fiduciary duty.

The parties have extensively briefed the matter and the Court has reviewed the pleadings, motion, opposition, reply thereto, and the applicable law. And, for the reasons that follow, the Court GRANTS Defendants' motion, in part, to the extent that certain of Plaintiffs' claims and requested relief may be limited, but DENIES it in general and allows Plaintiffs to proceed on their claims.

## II. Factual Background

Plaintiffs are George W. Loomis, Richard A. Lindstrom, Joseph Prather, Sherise Prather, Johnny T. Dyer, and John Tyler. Plaintiffs are either current or former Goodyear employees who acquired or held stock in the Bargaining Unit Plan and/or the Salaried Plan. (Compl. ¶¶ 11–16).

Defendant Goodyear is an Ohio Corporation. Goodyear manufactures tires and rubber products. It is the sponsor and named fiduciary of the Plans and it acts as administrator. Goodyear's responsibilities include oversight of and ultimate decision-making authority with respect to the management and administration of the Plans and the Plans' assets. Goodyear also appoints, removes, and monitors the other fiduciaries of the Plans that it appointed or those to whom it assigned fiduciary responsibility. This includes the Pension Committee, the Investment Committee, and the Plans' Trustee, Northern Trust. (Compl. ¶ 17).

Defendants Gibara, Keegan, Breen, Butler, Cruikshank, Farley, Hudson Jr., Minter, Pytte, Schofield, Turner, Walker, Fogarty, Laskawy, Zimmerman, Arnold, Boland, Forsee, Wriston, O'Neal, and Peterson (the "Director Defendants") are or were fiduciaries because they exercised responsibility for appointing, removing, and monitoring the Pension Committee, Investment Committee, and the Trustee. The Director Defendants also exercised decision-making authority regarding the management of the Plans' assets. Goodyear acted through the Director Defendants in carrying out fiduciary duties and responsibilities in connection with the Plans and they were fiduciaries to the

extent of their personal exercise of such responsibilities. Thus, they exercised discretionary authority with respect to management and administration of the Plans and the disposition of the Plans' assets. (Compl.¶ 18).

Defendants John Does 1–10 (the "Pension Committee Defendants") are or were fiduciaries because the Pension Committee acted on behalf of Goodyear with respect to general administration of the Plans and had the discretionary authority and power to administer and carry out the Plans' provisions and to take such actions as the Pension Committee deemed advisable. Thus, they exercised discretionary authority with respect to the management and administration of the Plans. (Compl.¶¶ 20–21).

Defendants Robert W. Tieken and John Does 11–20 (the "Investment Committee Defendants") are or were fiduciaries because they possessed and exercised responsibility for prudently selecting, reviewing, changing, and evaluating the performance of investment options for the Plans, taking action with respect to the available options, and reporting to and advising Goodyear's Board of Directors (the "Board"). Thus, they exercised discretionary authority with respect to the management and administration of the Plans and authority and control respecting the management and disposition of the Plans' assets. According to Plaintiffs, although the exact identity of the Investment Committee Defendants is unknown, the committee was generally made up of the three most senior financial officers of Goodyear. (Compl.¶¶ 22–25).

According to the allegations in the Amended Complaint, the purpose of the Plans is to enable participants to save for their retirements. (Compl.¶ 26). Both the Salaried Plan and the Bargaining Unit Plan were operated under essentially identical terms and procedures. Both plans were managed by the same fiduciaries. (Compl.¶ 27).

The gravamen of Plaintiffs' Amended Complaint is that Defendants breached their fiduciary duties under ERISA by failing to act solely in the interest of the Plans' participants and beneficiaries. According to Plaintiffs, the purpose of the Plans is to enable their participants to save for retirement. (Compl.¶ 26). The Plans operate under identical terms and procedures and share common fiduciaries. The fiduciaries' duties are also the same under both Plans. (Compl.¶ 27).

The Plans have two mains sources of contributions—those made by the employee (or participant) and those that are matched by Goodyear (the employer). (Compl.¶ 29). At one point in time, the participants were not allowed to direct any of their own contributions into the Goodyear Stock Fund,[1] but later, the Plans were amended to allow the participants to do so. (Compl.¶ 31). In addition, all employer matching contributions were invested in the Goodyear Stock Fund and, as a result, virtually all of the contributions were invested specifically in Goodyear stock within the Goodyear Stock Fund. Furthermore, for most of the Class Period, participants could not transfer any of the matching contributions to any other investment funds until they reached a certain age. (Compl.¶ 34).

In January 2003, Goodyear suspended all employer matching contributions and removed the Plans' restrictions that prevented participants from transferring funds out of the Goodyear Stock Fund. Goodyear, however, continued to offer its

---

**1.** The Goodyear Stock Fund is one of several investment funds made available to participants. It is designed to invest primarily in Goodyear stock. The Goodyear Stock Fund was not designed to invest exclusively in Goodyear stock. (Compl.¶¶ 37–38).

stock as an investment option. (Compl.¶ 36). Eventually, Goodyear stock lost value. According to Plaintiffs, the Plans acquired millions of dollars of Goodyear stock during the Class Period at artificially inflated prices. This, in turn, caused the Plans to incur substantial losses that could have been avoided had Defendants prudently and loyally managed the Plans' assets. (Compl.¶ 39–40).

Plaintiffs allege that Goodyear stock lost value because the company engaged in "accounting gimmickry and serious mismanagement." In other words, the loss was allegedly caused by Goodyear's (1) implementation of an enterprise resource planning accounting system in 1999 that caused Goodyear to overstate its net income and earnings; (2) there was a lack of internal controls and inability for Goodyear to ascertain its true financial condition; and, (3) certain unexplained "improper accounting issues" affected Goodyear's overseas operations. These alleged failings, Plaintiffs claim, resulted in various misstatements and misrepresentations of Goodyear's net income and financial results that made Goodyear stock an imprudent and unwise investment option. (Compl.¶ 63).

As a basis for their claims, Plaintiffs cite heavily to various financial statements that they deem to be inaccurate and misleading. These statements consist primarily of public announcements and SEC filings. (Compl.¶¶ 64–82). They also note that following the disclosure of the allegedly inaccurate and misleading statements, Goodyear announced that not only would it restate its earnings for the years 1998–2002, but that it had discovered certain "improper accounting issues" regarding its European operations. (Compl.¶ 83–86).

According to Plaintiffs, the various accounting machinations, schemes, and mismanagement made Goodyear stock an imprudent investment for the Plans during the Class Period. (Compl.¶ 90). They al-

lege that Defendants breached their fiduciary duties under ERISA by failing to prudently and loyally manage the Plans and the Plans' assets. Plaintiffs allege that Defendants either knew, or should have known, that Goodyear stock was not a good investment.

Furthermore, Plaintiffs allege that Defendants caused and permitted the Plans to make and maintain investments in Goodyear stock when they either knew or should have known that the stock was not a prudent investment. (Compl.¶¶ 94–101). They allege that certain Defendants, as fiduciaries of the Plans, failed to provide the participants with complete and accurate information regarding Goodyear stock and that this failure impacted the participants' ability to make reasonably informed decisions regarding Goodyear stock. (Compl.¶¶ 102–109).

Plaintiffs also allege that certain Defendants suffered from conflicts of interest that were caused by their compensation being tied to the price of Goodyear stock. As such, they allege that these Defendants had an incentive to keep the Plans' assets heavily invested in Goodyear stock and that they had a monetary incentive to fail to disclose information that would have called the value of the stock into question. They also allege that these Defendants had an additional incentive to downplay the accounting manipulations so as to not expose themselves to liability for their actions. (Compl.¶¶ 110–113).

According to Plaintiffs, Defendants also failed to properly monitor their fiduciary appointees and to remove those who breached their fiduciary duties under ERISA. Plaintiffs allege that Goodyear and the Director Defendants did not monitor the conduct of the Trustee, Pension Committee, and Investment Committee members. They also allege that these Defendants did not ensure that the appoin-

tees were qualified, competent, properly educated, and accurately informed. (Compl.¶¶ 114–116).

Specifically, Plaintiffs allege in Count I of the Amended Complaint that Defendants failed to prudently and loyally manage the Plans' investment in Goodyear stock when it was not a good investment option. In Count II, Plaintiffs allege that Defendants failed to advise the Plans' participants with complete and accurate information regarding Goodyear stock. In Count III, Plaintiffs allege that Defendants failed to monitor the performance of their fiduciary appointees and remove and replace those appointees whose performance was inadequate. In Count IV, Plaintiffs allege that Defendants breached their duties and responsibilities as fiduciaries and co-fiduciaries. Finally, in Count V, Plaintiffs state a claim against Goodyear for knowing participation in the alleged fiduciary breaches.

### III. Applicable Pleading Standard— Rule 12(b)(6)

In ruling on the typical Rule 12(b)(6) motion to dismiss, the Court "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995) (citing *Allard v. Weitzman,* 991 F.2d 1236, 1239–40 (6th Cir.1993)). If an allegation is capable of more than one inference, the Court must construe it in the plaintiff's favor. *Id.* The Court may not grant a Rule 12(b)(6) motion merely because it may not believe a plaintiff's factual allegations. *Id.* Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions. *Id.* To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must allege either "direct or inferential" allegations regarding all of the material elements necessary to sustain recovery under "some" viable legal theory. *Id.*

### IV. Discussion

■ "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Chao v. Hall Holding Co., Inc.,* 285 F.3d 415, 425 (6th Cir.2002) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). A person is a fiduciary under ERISA to the extent that he: (1) exercises any discretionary authority or control with respect to the management of a plan, or exercises any authority or control with respect to the management or disposition of plan assets; (2) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of the plan, or has any authority or responsibility to do so; or (3) has any discretionary authority or discretionary responsibility in the administration of the plan. 29 U.S.C. § 1002(21)(A).

■ ERISA requires that a fiduciary discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104(a)(1). In other words, a fiduciary must discharge his duties:

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of

large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions [of ERISA].

*Id.* The Sixth Circuit has explained that a fiduciary's responsibilities encompass three components. The first component is a "duty of loyalty," which requires that all decisions regarding an ERISA plan be made "with an eye single to the interests of the participants and beneficiaries." *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir.1995) (quotation omitted). The second component is the "prudent man" obligation, which imposes "an unwavering duty" on the fiduciary to act "as a prudent person would act in a similar situation" and "with a single-minded devotion" to the plan's participants and beneficiaries. *Id.* The third component requires that an ERISA fiduciary "act for the exclusive purpose" of providing benefits to plan beneficiaries. *Id.* The duties imposed on a plan fiduciary under ERISA are "the highest known to the law." *Chao*, 285 F.3d at 426 (quoting *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir.1996)).

## A. The Amended Complaint sufficiently pleads actions taken by Defendants in their fiduciary capacity that, if true, would constitute a breach of fiduciary duty.

According to Defendants, the actions that Plaintiffs allege to constitute a breach of fiduciary duties were not taken by them in an ERISA fiduciary capacity. Therefore, they argue, the Amended Complaint must be dismissed. Plaintiffs, however, claim that Defendants' argument that they were not acting in a fiduciary capacity fails, and that the Amended Complaint cannot be dismissed on this ground. The

Court agrees with Plaintiffs, but will address Defendants' arguments.

## 1. Even under the "Two Hats" Rule, the Amended Complaint pleads conduct that is subject to ERISA regulation.

■■■ It is well-established that an employer who also acts as an ERISA fiduciary is said to wear "two hats." *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir.1998) (citation omitted). As such, there is a distinction between employer actions that constitute "managing" or "administering" a plan and those that are merely "business decisions." *Id.* While actions that constitute "managing" or "administering" a plan are fiduciary actions, "business decisions" are not. *Id.* "However, the fact that an action taken by an employer to implement a business decision may ultimately affect the security of [the] employees' welfare benefits does not automatically render the action subject to ERISA's fiduciary duties." *Id.* at 666. Rather, "only discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to ERISA's fiduciary duties". *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 718 (6th Cir.2000) (quotation omitted).

In this case, Defendants argue that the acts listed in the Amended Complaint, on which Counts I and II are premised, are not acts that constitute "managing" or "administering" a plan. Rather, they argue that these acts were acts of corporate management and that, as such, they are not subject to ERISA's fiduciary duties. Plaintiffs, on the other hand, argue that the crux of the Amended Complaint is not that Defendants violated ERISA because they engaged in securities fraud, but that they failed, in their roles as fiduciaries, to take appropriate actions in light of the improper practices that were taking place. According to Plaintiffs, ERISA is implicat-

ed where in the face of the alleged securities violations, Defendants continued to offer Goodyear stock as a Plan investment option, matched in locked Goodyear stock, and withheld information about Goodyear's improper practices from the participants.

■ In a recent opinion issued from the Southern District of Ohio, the court recognized that while an employer may wear "two hats," the employer may only wear "one hat at a time." *In re Cardinal Health, Inc. Erisa Litigation,* 424 F.Supp.2d 1002, 1019. Moreover, as that court noted, when acting in a fiduciary capacity, the employer must wear only the fiduciary hat when making fiduciary decisions. *Id.* Thus, the threshold question in every case charging a defendant with a breach of fiduciary duty under ERISA "is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Id.* at 1019–20 (citations omitted).

■ Operating under that premise, and under the standard that governs a Rule 12(b)(6) motion to dismiss, the Court must consider whether Defendants were performing a fiduciary function when performing the actions listed in the Amended Complaint. Clearly, as Plaintiffs note, certain actions listed in the Amended Complaint, which arguably form the predicate for the alleged ERISA violations, are not themselves subject to ERISA's control. The actions that Plaintiffs' deem as "accounting gimmickry and serious mismanagement" do not implicate Defendants' fiduciary duties. In other words, the losses allegedly caused by Goodyear's implementation of an enterprise resource planning accounting system, lack of internal controls, and unexplained "improper accounting issues" are business decisions even though these decisions may have adversely affected the Plans.

■ However, certain actions alleged in the Amended Complaint are fiduciary actions. To explain, Plaintiffs allege that Defendants failed to prudently and loyally manage the Plans and the Plans' assets. In other words, they allege that Defendants—acting in their fiduciary capacities—caused and permitted investments in Goodyear stock when they either knew or should have known that the stock was not a good investment. Because managing plan assets is a fiduciary function, the allegations in the Amended Complain do fall within the confines of ERISA and Defendants were arguably acting in a fiduciary function when they caused and permitted investments in Goodyear stock, despite their alleged knowledge that the stock was not a good investment. Even if the fact-finding shows that there was no intentional "accounting gimmickry and serious mismanagement," Defendants can still be found to have violated their ERISA-imposed fiduciary duties if they continued to invest in Goodyear stock and they had knowledge (or should have had knowledge) that the stock itself was not a good investment despite the actual cause of the decline in its value. Accordingly, ERISA does provide a cause of action against Defendants arising out of the alleged "accounting irregularities" if Defendants, acting in their fiduciary capacity, had knowledge (or should have had knowledge) that Goodyear stock was not a good investment option for the Plans and they chose to act contrary to that knowledge.

**2. The Amended Complaint does not allege that Defendants violated their fiduciary duties by declining to violate securities laws.**

■ According to Defendants, Plaintiffs' claims must fail because they essen-

tially allege that Defendants were required by ERISA to engage in illegal insider trading. To put it another way, Defendants claim that Plaintiffs characterize as a breach of ERISA fiduciary duty Defendants' failure to share allegedly material nonpublic information with the Plans' participants and use it to override the Plans' terms to sell the Goodyear stock. These actions, Defendants argue, if taken would have involved illegal insider trading and thus, violated federal securities laws. Plaintiffs, on the other hand, argue that while Defendants are subject to securities laws, they are subject to all laws and that their compliance with securities laws does not negate their requirement to comply with other laws, such as ERISA. Thus, Plaintiffs argue, Defendants were still required to comply with ERISA and to prudently manage the Plans. The Court agrees.

Defendants, in support of their motion, attempt to find fault with the cases to which Plaintiffs' cite. Namely, they find fault with Plaintiffs' citation to cases that they claim were decided by courts who were influenced by the extreme facts before them, such as *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 284 F.Supp.2d 511, 565 (S.D.Texas 2003). The fact that *Enron* and other cases were premised on more egregious facts does not make the reasoning in those cases less sound. As the court in *In re Worldcom*, 263 F.Supp.2d, 745, 767 (S.D.N.Y.2003) stated, "the existence of duties under one federal statute does not, absent express congressional intent to the contrary, preclude the imposition of overlapping duties under another federal statutory scheme." This reasoning, which the Court deems appropriate here as well, has been echoed in other cases premised on less extreme facts than *Enron*. *See e.g., In re Ferro Corp.*, 422 F.Supp.2d 850, 862 (N.D.Ohio 2006) (following *Enron* and concluding "that federal securities laws do not relieve ERISA fiduciaries from their duties owed to plan participants."); *See also In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 824 (S.D.Ohio 2004) (also following *Enron* and refusing "to dismiss Plaintiffs' claims based on the argument that, to comply with ERISA, Defendants' would have had to violate the federal securities laws."). Accordingly, the Court will not dismiss Plaintiffs' claims on this ground.

### 3. The "efficient market" defense does not mandate dismissal at the pleading stage of litigation.

According to Defendants, even if they were required to use the undisclosed information for the benefit of the Plans' participants, they would have first had to publicly disclose it and the efficient market would have prevented them from avoiding any losses. They argue that once the allegedly material information was disclosed, the efficient national securities market would reflect the information in the price of the Goodyear stock because in an open and developed securities market, the market price of stock theoretically incorporates all available public information. Plaintiffs, on the other hand, argue that dismissal based on the efficient market defense is inappropriate at the pleading stage of the litigation. The Court agrees, as "whether those losses would have been more or less significant is a speculative issue inappropriate for resolution at this early stage of the litigation." *Ferro*, 422 F.Supp.2d at 863.

### B. Sixth Circuit precedent does not require the Court to dismiss Count I of the Amended Complaint as a matter of law.

Defendants next argue that controlling Sixth Circuit precedent requires the Court to dismiss Count I of the Amended Complaint because the facts alleged do not trigger in Goodyear a requirement to di-

versify the Goodyear Stock Fund. Plaintiffs counter by saying that a fiduciary's alleged failure to prudently invest plan assets is a question that is not appropriate for dismissal at the pleading stage. Again, the Court agrees with Plaintiffs, but will address Defendants' arguments.

### 1. The *Moench* presumption does not mandate dismissal of Plaintiffs' claims.

◼ According to Defendants, Plaintiffs' allegations that they had a duty to diversify the stock by overriding the Plans' terms are contrary to controlling Sixth Circuit precedent. In support of their argument, Defendants point to *Kuper*, 66 F.3d at 1459, which holds that a fiduciary's decision to invest in employer securities must be reviewed under an abuse of discretion standard. They also point to several other cases in which courts dismissed complaints under what Defendants deem a "heightened pleading standard" because the allegations were "insufficient." Plaintiffs, on the other hand, argue that summary adjudication is inappropriate. The Court agrees with Plaintiffs.

In *Kuper*, the Sixth Circuit followed the Third Circuit's decision in *Moench v. Robertson*, 62 F.3d 553 (3d Cir.1995). In following *Moench*, the Sixth Circuit held that a proper balance between the purpose of ERISA and the nature of an employee stock ownership plan requires that a fiduciary's actions be reviewed for an abuse of discretion. *Kuper*, 66 F.3d at 1459. Thus, the Sixth Circuit adopted the *"Moench* presumption." This presumption generally requires a finding that a fiduciary's decision to remain invested in employer securities was reasonable. *Id.* However, "[a] plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Id.*

Dismissal under either *Kuper* or *Moench*, however, is inappropriate at this stage of the litigation. Importantly, neither *Kuper* nor *Moench* mandates dismissal on the pleadings. And, the Court is not persuaded to dismiss Plaintiffs' claims on the pleadings merely because Defendants point to several other courts that have chosen to do so. Instead, the Court chooses to follow the reasoning set forth by Judge John M. Manos in *Ferro*. In that case, Judge Manos was faced with dismissing a case based on the *Moench* presumption. He recognized that while some courts do chose to evaluate the *Moench* presumption on a motion to dismiss, the propriety of doing so remains unclear because "presumptions are generally considered evidentiary standards, not pleading requirements." *Ferro*, 422 F.Supp.2d at 860.

Judge Manos went on to conclude, however, that the plaintiff had alleged sufficient facts to overcome the *Moench* presumption at the pleading stage of the litigation by alleging that: (1) the company had inflated its earnings expectations through accounting manipulations; (2) the defendants knew or should have known about the accounting irregularities; (3) the company stock plummeted as a result; and, (4) the plans lost millions of dollars. Thus, he concluded that the plaintiff had sufficiently alleged facts "showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Id.* (quoting *Kuper*, 66 F.3d at 1459). Applying this reasoning, Plaintiffs here have also alleged sufficient facts to overcome the *Moench* presumption at the pleading stage because they have alleged that (1) Defendants inflated Goodyear's earnings through accounting gimmickry and mismanagement; (2) Defendants knew or should have know about the accounting gimmickry and mismanagement;

(3) Goodyear stock plummeted as a result; and, (4) the Plans lost millions of dollars. Accordingly, the Court concludes that Plaintiffs have sufficiently alleged facts to withstand Defendants' Motion to Dismiss on this ground.

Because the Court finds that Plaintiffs have overcome the *Moench* presumption—at least for purposes of Defendants' Motion to Dismiss—it need not deal with Defendants' arguments that Plaintiffs' "red flag" allegations are insufficient to state ERISA claims. The Court does not find that either *Kuper* or *Moench* require a heightened pleading standard and it finds Plaintiffs' allegations are sufficient under a notice pleading standard. *See generally AEP*, 327 F.Supp.2d at 821–22 (discussing ERISA's pleading requirements and noting that other courts "routinely apply only the general, liberal pleading standards of Rule 8 to ERISA claims") (citations omitted). Moreover, *Moench* does not limit its holding to companies facing an "impending collapse" and *Kuper* has a much broader holding and never uses the words "impending collapse." *Ferro*, 422 F.Supp.2d at 860–61. As such, Plaintiffs need not plead that Goodyear was on the brink of an impending collapse and the Court need not consider whether there was an impending collapse, as that is not the legal standard under which the Court must review the Amended Complaint. Rather, the Court must review the Amended Complaint under the guise of Rule 8 and Rule 12(b)(6) and neither of these rules require Plaintiffs to prove their case on the pleadings.

## C. Count II of the Amended Complaint will not be dismissed for failure to state a claim.

Defendants next argue that Count II of the Amended Complaint fails to state a claim because the purported misrepresentations and omissions are not cognizable under ERISA. They also argue that although Plaintiffs request monetary relief they cannot recover money damages under ERISA.

### 1. Plaintiffs have stated a claim that Defendants breached ERISA's affirmative duty of disclosure and negative duty to not misinform.

Count II of Plaintiffs' Amended Complaint alleges that Defendants had a duty to inform the Plans' participants of certain information and that they had a duty to refrain from providing them with false information. Under ERISA, a fiduciary has an obligation to convey complete and accurate information to its beneficiaries. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 452 (6th Cir.2002) (quotations omitted). This duty to disclose "entails not only a negative duty not to misinform, but also an affirmative duty to inform when ... silence might be harmful." *Id.* (quoting *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir.1993)). However, as Defendants note, the Sixth Circuit has limited the duty of disclosure to include only those things about which ERISA requires disclosure. *Sprague v. General Motors Corp.*, 133 F.3d 388, 405 (6th Cir. 1998). According to the court, "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Id.* (citation omitted). Because of this, Plaintiffs claims that Defendants violated the duty to disclose are limited to only those disclosures required by ERISA. *See also Ferro*, 422 F.Supp.2d at 864 (limiting the plaintiff's affirmative duty to disclose claim to the disclosure requirements set forth in 29 U.S.C. §§ 1021–1026 and holding that the defendants did not have a duty to disclose non-public information to plan participants

about the alleged accounting irregularities).

## 2. Plaintiffs have sufficiently alleged that Defendants were acting in a fiduciary capacity with respect to Count II of the Amended Complaint.

Defendants next argue that Count II should be dismissed because Plaintiffs have not alleged facts that support their allegations that Defendants were acting as fiduciaries with regard to the allegedly misleading communications. Defendants point to the Supreme Court's opinion in *Varity Corp. v. Howe*, 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) and the Sixth Circuit's opinion in *Marks v. Newcourt Credit Group*, 342 F.3d 444, 454 n. 2 (6th Cir.2003) to support their argument that Plaintiffs' claims must be dismissed unless the misrepresentation in question involves the availability of or extent of plan benefits. Defendants are correct that any alleged misrepresentations made in public statements that were not specifically tied to plan benefits are not actionable under ERISA. *Ferro*, 422 F.Supp.2d at 865. However, certain allegations are actionable, i.e. those that relate to SEC filings that were incorporated into the Plans' documents and/or that were disseminated to the Plans' participants. *Id.* Accordingly, any misrepresentations contained in official Plan documents or incorporated by reference in those documents are actionable under ERISA. *Id.* (finding that misrepresentations contained in SEC filings were actionable under ERISA) (citations omitted).

## 3. Plaintiffs have plead equitable damages recoverable under Section 502(a)(3).

Defendants also argue that because ERISA does not authorize money damages the Court should dismiss Count II of the Amended Complaint. According to Defendants, Plaintiffs "unabashedly" demand money damages for their personal losses and they argue that monetary damages are outside the scope of available equitable relief. Plaintiffs, on the other hand, argue that Defendants are incorrect and that they may seek to recover any losses to the Plans that resulted from a breach of fiduciary duty. Plaintiffs are correct that they can seek money damages under Section 502(a)(2). They cannot, however, seek money damages under Section 502(a)(3).

To explain, Plaintiffs' Amended Complaint pleads causes of action under both Sections 502(a)(2) and 502(a)(3) of ERISA. Pursuant to Section 502(a)(2), participants may bring an action for relief from breaches of fiduciary duty on behalf of the plan itself. 29 U.S.C. § 1132(a)(2). Plan fiduciaries who breach their responsibilities under ERISA may be held personally liable to make good to the plan any losses resulting from the breach and to restore to the plan any profits that have been made. 29 U.S.C. § 1109(a). The fiduciary is also subject to any other equitable or remedial relief that the Court deems appropriate. *Id.* Section 502(a)(3) allows a participant to file a lawsuit to enjoin any practice or act that violates ERISA or to obtain other appropriate equitable relief to redress any violations of ERISA's provisions. *Id.* at § 1132(a)(3). In other words, Plaintiffs can file suit under Section 503(a)(2) on behalf of the Plans for the alleged breach of fiduciary duty where any recovery goes to the plan itself. *Id.* at § 1132(a)(2); *See also Pfahler v. National Latex Co.*, 405 F.Supp.2d 839, 844 (N.D.Ohio 2005) (noting that plan participants cannot use Section 503(a)(2) to obtain individual damages) (citations omitted). However, under Section 502(a)(3) Plaintiffs can only seek "appropriate equitable relief" on behalf of themselves as individuals. *Id.* at § 1132(a)(3). Money damages are specifi-

cally disallowed. *Helfrich v. PNC Bank, Kentucky, Inc.* 267 F.3d 477, 481 (6th Cir. 2001) (noting the availability of restitutionary relief in actions brought pursuant to Section 502(a)(3)) (citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). Accordingly, Plaintiffs can pursue legal damages on behalf of the Plans under Section 502(a)(2) and only equitable remedies under Section 502(a)(3).

## V. Conclusion

Additional arguments have been raised regarding dismissal of the claims in whole or in part against various Defendants. Because Plaintiffs' claims will not be dismissed in whole on the pleadings, Defendants can raise the remainder of their arguments in their motion for summary judgment. The crux of these arguments is that dismissal is appropriate because the Amended Complaint fails to allege facts sufficient to establish that the various Defendants acted in a fiduciary capacity and/or that they breached their fiduciary duties under ERISA. However, because ERISA does not have heightened pleading standards the Court is not inclined to make Plaintiffs prove their case without the benefit of an evidentiary record. In addition, the Court will hold in abeyance its ruling on whether Plaintiffs can proceed under the theory of *respondeat superior* under ERISA. The Court, therefore, finds that Plaintiffs have stated a claim under ERISA and Defendants' Motion to Dismiss is DENIED.[2] The Court will schedule a status conference to discuss how the case will proceed.

IT IS SO ORDERED.

---

2. Plaintiffs are strongly encouraged to streamline their claims if at any point it be-comes evident that they do not have a valid cause of action against any of the Defendants.